Helen Yaich **CHRISTOPHERSON,**
Appellant,

v.

Kathalene Tibbels **HUMPHREY,** Appellee.

No. 8652.

United States Court of Appeals
Tenth Circuit.

Sept. 15, 1966.

Benjamin E. Sweet, Denver, Colo. (Gilbert C. Maxwell, Denver, Colo., was with him on the brief), for appellant.

Roger L. Simon, Denver, Colo. (Nicholas Makris, Denver, Colo., was with him on the brief), for appellee.

Before LEWIS, JONES * and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Stephen Yaich, the 14-year old son of the appellant-plaintiff, was killed when the bicycle which he was riding collided with an automobile driven by the appellee-defendant. The mother brought this action under pertinent Colorado statutes to recover for his death. Jurisdiction is based on diversity. The claim here is that the district court erroneously directed a verdict in favor of the defendant.

The accident occurred at the "T" intersection of Federal Boulevard and 70th Avenue in Adams County, Colorado. Federal is a four-lane divided highway with two lanes for southbound traffic and two lanes for northbound traffic. 70th runs east and west, enters Federal from the east, and does not extend west of Federal. The intersection is controlled by a complex of traffic signals. Suspended over each of the traffic lanes on Federal is a set of the usual red, amber, and green lights. On the south side of the intersection at the point of the divider is another combination of lights. These face the southbound traffic and in addition to the red, amber, and green have as a fourth light a green arrow directing the left-turn traffic off Federal into 70th. The lights remain green in all Federal lanes until they are activated by detectors. One detector is placed some distance east of Federal on the north lane of 70th and, when it is activated by a vehicle passing over it, the lights controlling the Federal traffic change to red to permit traffic from 70th to enter Federal.

North of the intersection on Federal there is a third lane cut into the divider for use by traffic making a left turn into 70th. In such lane is another detector activated by vehicles crossing it. When both the detector on 70th and the detector in the left-turn lane on Federal are activated, the arrow in the light combination on the divider will be illuminated to permit left turns into 70th. This activation will occur only if both detectors have been tripped but not necessarily at the same time. When the Federal overhead lights are green the light on the divider is green indicating a permissive left turn into 70th.

On the afternoon of the accident the decedent, Stephen, and a 13-year old friend David, both riding bicycles, entered Federal north of the intersection and proceeded to the left-turn lane. David testified that he bounced on the detector,[1] that the left-turn arrow never came on, that they waited "about five or ten minutes" through several light changes, and that they finally decided to proceed when the light turned green. At the time there were some cars in the left lane of the two northbound Federal lanes stopped by the red light. On the change of the light to green Stephen started up but David remained behind. The cars in the left lane waited for Stephen but he was hit by the defendant's car which was proceeding north in the right lane at a speed of 30–40 miles per hour, well within the 45-mile-an-hour speed limit.

Defendant, who had obtained her driver's license about three months previously, was driving a small Austin Healy sports car and was familiar with the intersection. About 400 feet south of the intersection a bridge on Federal is elevated. When defendant came over this rise she saw that the light at 70th was red and that several cars were stopped in the left lane. She turned into the right lane. As she approached the inter-

---

* Of the Fifth Circuit, sitting by designation.

1. This should have activated the left-turn signal because the record shows that, while the boys were waiting, traffic on Federal was stopped by a red light. A state highway engineer testified that there was no malfunction of the traffic signal equipment.

section the light changed to green and she accelerated. In the left northbound lane were three or four cars. The first was a Chevrolet station wagon. Its driver saw the boys on the bicycles and, when the light became green, hesitated because he was not sure what the boys were going to do. Stephen then crossed in front of the Chevrolet and collided with the left front of the Austin Healy driven by the defendant. The defendant did not see Stephen until her car hit him. She testified that she could have seen him when her car went over the mentioned rise. As she neared the intersection her view was impeded by the cars stopped in the left lane.

The district court sustained a motion to strike that portion of the plaintiff's pleadings asserting the claim of last clear chance and directed a verdict in favor of the defendant. It held that the proof showed the absence of negligence on the part of the defendant and established contributory negligence on the part of the decedent. The appeal attacks all of these rulings.

This is not a last clear chance case. In Colorado, for that doctrine to be applicable, it must be shown that after discovery of plaintiff's danger, defendant could have prevented the injury by the use of reasonable care.[2] The record before us does not disclose that the defendant had any opportunity to avoid the accident after becoming aware of the hazardous position of Stephen on his bicycle.

The action of the district court in directing a verdict for the defendant poses a serious question. The Colorado law on negligence in personal injury actions is well summarized in Martin K.

Eby Const. Co. v. Neely, 10 Cir., 344 F. 2d 482, 485, cert. granted 382 U.S. 914, 86 S.Ct. 286, 15 L.Ed.2d 230. The person asserting negligence must prove it by a preponderance of the evidence and that burden is not sustained by surmise, speculation or conjecture. Proof that an accident occurred and an injury resulted is not enough. The negligence must be the proximate cause of the injury. Proximate cause is ordinarily a question of fact for the jury. Only where the facts and the reasonable inferences therefrom are undisputed does it become a question of law for the court.[3]

The right to a jury trial in federal courts is a matter of federal law in diversity as well as other actions.[4] This principle applies to the treatment to be given motions for a directed verdict.[5]

It seems hardly necessary to repeat the rule in this circuit that a trial judge may grant a directed verdict "only when in his considered judgment it would have no foundation in fact, and the court in the exercise of its judicial discretion would be required to set it aside."[6] The district judge recognized this rule and said that if the jury returned a verdict for the plaintiff he would set it aside.

Although the rule is simple, its application by a trial court "is always perplexing and necessarily subject to the human equation."[7] In borderline cases it is difficult to exclude the personal equation, but a trial judge must recognize the possibility that, "whatever might be his own view, other fair-minded men might reasonably arrive at a contrary conclusion."[8] In passing on a motion for a directed verdict he must view

2. Werner v. Schrader, 127 Colo. 523, 528, 258 P.2d 766. See also Dennis v. Johnson, 136 Colo. 357, 362, 317 P.2d 890, and Colorado & Southern Ry. Co. v. Duffy Storage & Moving Co., 145 Colo. 344, 347, 361 P.2d 144.

3. See Goll v. Fowler, 124 Colo. 404, 410, 238 P.2d 187.

4. Simler v. Connor, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691.

5. See Herron v. Southern Pacific Co., 283 U.S. 91, 93, 51 S.Ct. 383, 75 L.Ed. 857.

6. High Voltage Eng'r Corp. v. Pierce, 10 Cir., 359 F.2d 33, 38.

7. Ibid.

8. Smith v. Reinhauer Oil Transp., Inc., 1 Cir., 256 F.2d 646, 649.

the evidence in the light most favorable to the opposing party.[9] Although a scintilla of evidence is not sufficient to justify submitting a case to the jury,[10] a verdict may not be directed unless the evidence points all one way and is susceptible of no reasonable inferences which sustain the position of the party against whom the motion is made.[11]

■ The case at bar presents no substantial conflict in the evidence. The result depends on the inferences which reasonable men might draw from that evidence. Let us first look at the conduct of the defendant. When she went over the rise she could have seen the boys but did not. As she turned into the right lane her view of the boys was obstructed by the cars in the left lane. Those cars did not move forward when the light changed. In the circumstances it is not unreasonable to infer that her act of accelerating when she entered the intersection was negligent.

■ The question then turns to whether the decedent was contributorily negligent. Here we must consider the signal complex including the permissive left turn on the green light, the age of the boy killed, and the fact that the boy proceeded after the cars in the left northbound lane on Federal had waited for him. Those cars obstructed his view of a small car approaching in the right lane. In such circumstances we believe that the question of contributory negligence should have gone to the jury.

The issue is a close one. As judges we must be tolerant of differences of opinion. We conclude that on the record presented reasonable men might draw inferences which would sustain a verdict for the plaintiff. Accordingly, a verdict for the defendant should not have been directed.

Reversed and remanded for a new trial.

---

9. Commercial Standard Ins. Co. v. Feaster, 10 Cir., 259 F.2d 210, 213–214.

10. McKenna v. Scott, 10 Cir., 202 F.2d 23.

11. United States v. Hess, 10 Cir., 341 F.2d 444, 448; Peter Kiewit Sons Company v. Clayton, 10 Cir., 366 F.2d 551.